UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA

v.                                                    CASE NO. 8:16-cr-333-T-33MAP

MICHAEL WILSON

**UNITED STATES OF AMERICA'S RESPONSE
TO DEFENDANTS MOTION TO EXCLUDE TESTIMONY/EVIDENCE**

The United States of America hereby responds to Defendant's Motion to

Exclude Testimony/Evidence (Doc. 32) and states:

**Introduction**

The Defendant, Michael Wilson, filed a composite motion to exclude

seven different categories and items of evidence from his upcoming felon in

possession trial.

Wilson is charged in a single count superseding indictment[1] with

possessing a .45 caliber handgun and ammunition on or about December 11,

2015.  Law enforcement did not find Wilson in direct, physical possession of the

firearm.  Rather, they found it in a bedroom where he was located during a

search warrant.  Recordings of Wilson while in jail indicate that he plans to deny

that it was his bedroom, and by extension, his firearm.

---

[1] The superseding indictment fixed an error in the indictment charging Mr. Wilson with possessing the same firearm and ammunition on December 7, 2015, four days earlier.

According to witnesses, Michael Wilson deals methamphetamine in Pasco County, Florida.  Some of the trial witnesses have seen him with a gun that matched the one found in his room.  Those incidents were connected to drug deals involving the witnesses.  To adequately explain how these witnesses know what they know about the gun, the Government plans to tell the story, which necessarily involves descriptions of drug activity.

Also according to witnesses, Michael Wilson is a member of a white supremacist group.  Witnesses are prepared to testify to the issue, and he has tattoos associated with the movement.  Various items of white supremacist paraphernalia were found within the trailer and room searched by police in connection with this case.  Because Wilson denies that he lived in the trailer or that the bedroom was his, the Government intends to introduce evidence linking him to it – namely, a white pride t-shirt and Nazi memorabilia.

Challenges to the drug and white supremacist related evidence make up the bulk of Defendant's claims and are addressed in full below.

## Procedural History

The Defendant filed a motion to exclude various evidence after the Government sent his counsel an e-mail with the subject line "Wilson – 404(b) notice," which set forth three specific issues the Government intended to raise at trial, and why the Government planned to raise them.[2]

---

[2] The Government did indicate in the e-mail that the evidence might be thought of as "inextricably intertwined" evidence, and thus not necessarily required to be disclosed under 404(b).  But the Government disclosed it and the proposed use anyway, in an abundance of caution.

The Government has never indicated that it intends to introduce evidence that Michael Wilson said "Heil Hitler," or photos of Michael Wilson wearing a white supremacist mask, or that the firearm listed in the Superseding Indictment was stolen.  Defendant raises argument related to those matters in his motions numbered five, seven, and ten.  To the extent Defendant asks that such evidence be kept from the jury, the Government believes the issues to be moot.

### The Government's Case

On December 11, 2015, a Pasco County SWAT team raided a trailer in the Moon Lake neighborhood of Pasco County, Florida.  The search was conducted because of a search warrant in which multiple people claimed that Michael Wilson was selling methamphetamine from the residence.  Michael Wilson is a convicted felon and is known by others as "Moon Lake Mike."

Five people were in the trailer at the time of the raid:  the Defendant, his then-girlfriend Robin Williams, Amanda Oehlecker, Deke Capshaw, and Katy Wommack.  Wilson and Williams were found together locked in a bedroom, and SWAT.

In that bedroom in plain view, law enforcement found the loaded firearm at issue in this case.  They also found two digital scales, ring baggies, small amounts of substances that field tested positive for marijuana and methamphetamine, safes, glass pipes, over $900 in cash, and a notebook consistent with a drug ledger with "Moon Lake Made" written on the cover.  Flat screen TVs hung on the wall, and they were connected to a surveillance system

that watched the outside of the residence.  On another bedroom wall hung a shirt that said "White Pride World Wide."  Law enforcement also found two large knives bearing Nazi markings in the trailer.

After the search, Wilson told officers that he was not living in the trailer, and that he was just there for an evening with his girlfriend.  He also indicated that he had lived there in the past, but he stayed in a different room than the one he was found in during the search.  Wilson has continued to deny living at the trailer in jail calls, but has also indicated that everything in the trailer was his, including the flat screen TVs, clothing to include leather jackets, and his dog.

This is a constructive possession firearm case heavily reliant on testimonial evidence, and little physical evidence.  Proving that Wilson maintained a presence at the trailer, and that the room he was found in was his own, is critical to the Government's case.  The Government plans to make its case through the testimony of Robin Williams, Tabitha Higdon, and Deke Capshaw, each of whom will testify that the bedroom was Wilson's.

The Government also plans to prove that the room was Wilson's by linking him to other objects in the room.  In large part, that will be done by linking his white supremacist affiliation (shown through tattoos and testimony of others) with a white supremacist t-shirt decorating the wall of the room.

Evidence of Michael Wilson's drug dealing activities is also central to the prosecution's case.  Ricky Fann, whose nickname is "Bubba," is a federal defendant who recently signed a plea agreement in connection with a

4

methamphetamine distribution conspiracy.  Fann will testify that he knew Wilson because he sold him methamphetamine on a weekly basis, and that Wilson often carried a silver .45 caliber handgun – of similar style – to the one found in Wilson's bedroom.

Tabitha Higdon met Wilson in 2015 and he invited her to work for him selling drugs.  She will testify that Wilson owned a silver pistol in November of 2015, and that she knows so because he asked her to carry it for him one night.

Robin Williams will testify that she was dating Wilson at the time of the raid, that the bedroom was his, that he flushing controlled substances down the toilet during the raid.  Along with Wilson, she was charged in the state for various crimes related to the search warrant.  She is also able to identify the gun the firearm as Wilson's chrome .45, and that he brought it with him everywhere because he was paranoid that someone was going to rob him for his methamphetamine.

Williams will also testify that when she was released from jail in connection with state charges stemming from the incident, Wilson confronted her in person.  At that time, he threatened her.  In connection with questioning as to why she turned "state's evidence" on him, he told her he could get to her at any time, that he could arrange for her to be hog-tied and brought to him, and that there was a price on her head.  At that time Wilson made the threat, his state charges related to the search of the trailer had not been resolved.

The Government also intends to introduce Wilson's own statements on jail calls that corroborate the statements of these witnesses.  For instance, as Wilson is attempting arrange to be bonded out of state custody, he repeatedly mentions that someone needs to get in touch with "Bubba" (Ricky Fann), and that Bubba will bail him out because Wilson makes thousands of dollars for him on a daily basis.  To try and secure more funds, he also mentions the drug ledger found in the bedroom, and tells the listener that she can go through the book and find people that owe him money.

## Law and Argument

### I.    Legal Principals

Defendant challenges each item of evidence under Federal Rules of Evidence 401, 403, and 404.  As set forth below, those rules and the case law interpreting them show all of the evidence sought to be excluded is admissible.

The "federal rules favor the admission of evidence over the exclusion of evidence if the evidence has any probative value." *United States v. King*, 713 F.2d 627 (11th Cir. 1983).   In that vein, "the standard for what constitutes relevant evidence is a low one." *United States v. Tinoco*, 304 F.3d 1088 (11th Cir. 2002).  Evidence satisfies the rule if it has "*any tendency*" to make the existence of a fact of consequence more or less probable.  *Id.* (emphasis added).  And all relevant evidence is admissible, unless barred by another rule.  Fed. R. Evid. 402.

6

Rule 403 is such an exclusionary rule.  However, even that rule slants towards admissibility.  Certain evidence may be excluded if the probative value of that evidence is *substantially* outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.  "The major function of Rule 403 is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."  *United States v. King*, 713 F.2d 627 (11th Cir. 1983) (internal quotation marks omitted).  All relevant evidence is "inherently prejudicial, it is only when unfair prejudice" comes to light that Rule 403 is implicated.  *Id.*

There is absolutely no doubt, for instance, that evidence tinged with overt racism carries the possibility of unfair prejudice.  It should be treated with caution. But even with its inflammatory nature, the Eleventh Circuit has upheld the introduction of evidence as inflammatory as the conscious imitation of Hitler and the Third Reich methods in a drug conspiracy case.  *United States v. Lehder-Rivas*, 955 F.2d 1510 (11th Cir. 1992).  Likewise, it has upheld the introduction of evidence related to the practices of the racist prison gang the Aryan Brotherhood[3] and their beliefs.  *United States v. Mills*, 704 F.2d 1553 (11th Cir. 1983).  Extremely provocative evidence is still admissible under 403, if it's important enough to the prosecution's case.

Relevant evidence of other acts needs to meet another test.  So-called intrinsic evidence of other acts is admissible because it is "inextricably intertwined" with the indicted offense.  It is not analyzed under for admissibility

---

[3] Michael Wilson is believed to be a member of the Aryan Brotherhood.

under the other acts rule found at 404(b).  *United States v. Capers*, 708 F.3d

1286 (11th Cir. 2013).

Inextricably intertwined evidence arises in different ways.  If evidence is

"an integral and natural part of the witnesses' accounts of the circumstances

surrounding the offenses for which the defendant was indicted," it is admissible,

and without reference to Federal Rule 404(b).  *United States v. Foster*, 889 F.2d

1049 (11th Cir. 1989).  Thus, where a witness needs to explain how and why he

ended up with something of evidentiary value, he can explain how and why even

doing so reveals other bad acts*.  See United States v. Males*, 715 F.2d 568 (11th

Cir. 1983).

In *Males*, the defendant was indicted for possessing with intent to

distribute cocaine on the specific date of October 21st.  The main witness against

him, a man named Keen, was caught with the defendant's cocaine on that date.

The prosecutor asked Keen about prior narcotics transactions with the

defendant, and the defense objected.  *Id*.  The Eleventh Circuit held that such

testimony was admissible as inextricably intertwined because the background

information helped the jury understand how it was that Keen came to be holding

onto the defendant's cocaine.  *Id*.

Similarly, distinct "acts" that make up a single criminal episode do not

become "other acts" for 404(b) purposes simply because the other acts were not

indicted.  *United States v. Thomas*, 242 F.3d 1028 (11th Cir. 2001).  Such acts

are intrinsic evidence and admissible without reference to Rule 404(b).

The facts of *Thomas* are almost identical to those in this case. The defendant went to trial on a single count of being a felon in possession. *Id.* Before that, police had conducted a search warrant after witnessing drug activity at his residence. *Id.* When they arrived, there were no drugs, but they did find a gun. *Id.*

The prosecution sought to introduce evidence of the prior drug activity at the house to prove the gun was the defendant's, and the defense objected. The Eleventh Circuit agreed with the prosecution. Noting the ever present nexus between guns and drugs, it held that evidence of the drug dealing was admissible in the gun case because they are not "wholly separate and independent crimes." Evidence of drug trafficking in close temporal and physical proximity was evidence of "knowing possession of firearms," not character. *Id.*

Extrinsic evidence of other acts is admissible too, but unlike intrinsic evidence, it must meet the requirements of Rule 404(b). That being said, 404(b) is "a rule of inclusion," not exclusion. *United States v. Phaknikone*, 605 F.3d 1099 (11th Cir. 2010). Therefore, when such evidence is "central to the prosecution's case is should not lightly be excluded." *United States v. Troya*, 733 F.3d 1125 (11th Cir. 2013). To introduce 404(b) evidence, the government must show: (1) a proper purpose for it, (2) that the prior act occurred and the defendant was the actor, and (3) the probative value of introducing the evidence outweighs any prejudicial effect the evidence might have. *United States v. Cancelliere*, 69 F.3d 1116 (11th Cir. 1995).

A proper purpose is a reason distinct from the "defendant's character or propensity to commit a crime." *United States v. Duran*, 596 F.3d 1283 (11th Cir. 2010). Rule 404(b) provides its own list of non-exclusive proper purposes, with motive, knowledge, and identity being the primary issues in this case.

## II. The challenged evidence meets the very low relevancy threshold of the Federal Rule of Evidence 401.

The Defendant challenges three categories of evidence: Evidence related to drug dealing activities, evidence related to white supremacist group membership, and evidence related to witness intimidation.

### a. Drug related evidence

The evidence related to Wilson's profession as a drug dealer is relevant under the very low standard of Federal Rule of Evidence 401. Many of the witnesses who will testify against him know what they know precisely because they helped Wilson deal drugs. For instance, Ricky Fann knows Wilson because he supplied Wilson with methamphetamine for redistribution. He also saw Wilson carry a silver pistol like the one found in the bedroom during the search warrant. That Ricky Fann knew Wilson at all is made more likely by his ability to specifically state how he knew him from. And that Ricky Fann knew Wilson had a silver pistol is made more likely by the fact that they engaged in the drug business together. Such evidence clearly has a tendency to prove a fact at issue in the case.

With respect to evidence of drug dealing within the trailer, the Eleventh Circuit has repeatedly noted the close nexus between gun possession and drug dealing.  *United States v. Lopez,* 649 F.3d 1222 (11th Cir. 2011) ("[T]his Court has long recognized that, as Forrest Gump might say, drugs and guns go together like peas and carrots."); *see also Thomas, supra.*  Evidence connecting Wilson to the room, connects Wilson to the drugs and dealing paraphernalia in the room, which gives him reason to possess the gun in the room.  Accordingly, such evidence is relevant under Rule 401.

### b.  White supremacist related evidence

Wilson's connection to a white supremacist organization is also relevant. Wilson denies a permanent connection with the residence, but the firearm was found in a trailer with Nazi memorabilia and a white pride t-shirt.  Wilson's membership in the group tends to make it more likely that the belongings were his, that he lived there, and that other items found there were his as well.

### c.  Threats to witnesses evidence

Finally, Wilson's threats to Robin Williams are relevant as consciousness of guilt.  Wilson acted guilty by trying to intimidate someone to prevent testimony against him.  Such actions tend to make it more likely that he actually is guilty of the offense charged against him.  "Courts may consider evidence of threats to witnesses as relevant in showing consciousness of guilt." *United States v. Gonzalez*, 703 F.2d 1222 (11th Cir. 1983).

III.     **The probative value of the challenged evidence is not substantially outweighed by the danger of unfair prejudice, and is therefore admissible under Federal Rule of Evidence 403.**

     a.  **Drug related evidence**

The probative value of Wilson's prior drug deals with witnesses against him is high.  Each such witness will ultimately testify that they witnessed Wilson with a gun in connection with their drug dealing.  Without being able to explain the context for how they know Wilson or how they saw him with the gun, their story has gaps that will leave the jury wondering whether they are telling the truth, to the detriment of the Government's case.  And while not exactly boring testimony, run-of-the-mill drug dealing stories are not likely to so inflame a jury to the point that they cannot consider the evidence dispassionately.  In such a scenario, Rule 403 requires admission of the evidence.

The probative value of drug related evidence found in the bedroom of the trailer also far outweighs the unfair prejudice Wilson might experience because of its admission.  The Government is prosecuting a constructive possession case.  Every piece of evidence that links the defendant to knowing the gun was in that room is critically important and probative.  *United States v. Watchmaker*, 761 F.2d 1459 (11th Cir. 1985) ("Probative value is, at least in part, a function of the prosecution's need for the evidence in making its case.")  As for its prejudicial quality, the presence of small quantities of methamphetamine, marijuana, and

scales (found in a room he denies living in) is not the type of evidence that will

enrage a jury into an emotional decision and unfairly prejudice him.

### b. White supremacist related evidence

With respect to the white supremacist related evidence, its importance to

the prosecution's case cannot be overstated.  It is one of the few pieces of

unbiased physical evidence in this case.  The Government will not be presenting

fingerprint evidence from the firearm, it will not be presenting DNA evidence.

The probative value of the t-shirt with respect to who lived in the bedroom with

the gun is extremely high.

While there is undoubtedly the possibility of unfair prejudice coming from

such a sensitive topic, the Defendant should not be allowed bootstrap himself

into a better case by virtue of his association with such an inflammatory

organization.  Moreover, this Court has already ensured that we will have a larger

jury pool to pick from to ensure objectivity.  And careful instructions about the

evidence can ensure that it is used properly.  *See United States v. Larose*, 399

Fed. Appx. 575 (11th Cir. 2010) ("The voicing of potentially prejudicial remarks by

a witness is common, and any prejudice is generally cured efficiently by

cautionary instructions from the bench.").

### c. Threats to witnesses evidence

Finally, the probative value of threats against a witness are not

outweighed by the danger of unfair prejudice.  The brazen nature and violent

content of the threats indicate just how guilty Wilson felt, and how desperate he

was to avoid punishment.  For that reason, the threats are particularly probative.  And the prejudice they may engender are the product of the methods Wilson himself chose to use.  Wilson should not be heard to complain about prejudice for things he chose to do.  If he believes the threat story to be fabricated, his counsel will have the opportunity to cross-examine the witness and undue whatever unfairness he suffered.

### IV.    The challenged evidence is admissible, with or without reference to Federal Rule of Evidence 404(b).

### a.  Drug related evidence

As noted above, Ricky Fann and Tabitha Higdon were both involved in drug deals with Michael Wilson, and did so near the time of the indicted offense.  Ricky Fann sold methamphetamine to Wilson.  Tabitha Higdon sold methamphetamine for Wilson.  Meth is how and why they interacted with Wilson, and it is how they came to know he had a silver firearm.

How and why they know Wilson and about his gun – drug deals -- is "an integral and natural part of the witnesses' accounts of the circumstances," and is thus admissible as inextricably intertwined.  *See Foster*, *supra*.  Without an explanation for their knowledge, the jury is left to guess whether the two of them are just fabricating their testimony and knowledge because of the lack of details, to the detriment of the Government's case.

With respect to the evidence found in the trailer, *Thomas* makes clear that evidence of drug distribution, temporally and physically close to a firearm, is

admissible as intrinsic in a firearms possession case.  *See Thomas, supra*.  In

this case, drugs, paraphernalia, drug ledgers, money and testimony from Robin

Williams will show that Wilson was in possession of drugs before the raid for the

purpose of selling them.  While there is no drug charge in this case, the presence

of those items in the bedroom tends to show Wilson knew about the gun in the

bedroom – the paramount issue in this case.  As the Eleventh Circuit discussed

in *Thomas*, there is an undeniable linkage between gun possession and drug

dealing, so much so that evidence of one is admissible to prove the existence of

the other.

Even if the Court does not view the drugs in the room as intrinsic

evidence, it should still be admitted under 404(b).  There is little doubt that there

is a proper purpose for doing so.  The Government needs to prove who

knowingly possessed the gun – knowledge and identity – which are both proper

purposes under the Rule.  *See* Fed. R. Evid. 404(b).  If Wilson is in his own room

with drugs and distribution paraphernalia, it makes it more likely that the gun is

his.  Moreover, the presence of drugs and distribution paraphernalia in his room

explains why Wilson would knowingly have a gun – he needs to protect his stash

– going to motive.  Knoweldge and identity are both proper purposes to admit the

evidence under Rule 404(b).

### b.  White supremacist related evidence

The Government can prove that Wilson is a member of a white

supremacist group.  It will so through testimony of witnesses who know him and

through testimony of law enforcement officers familiar with the white supremacist movement and the associated tattoos.  The Government can then link Wilson to to the bedroom in which a firearm was found by, among other things, showing the presence of white supremacist items.

The Government has absolutely no intent on suggesting Wilson acted in conformity with a white supremacist organization in this case.  There will be no testimony about racist motives or incidents, there will be no testimony about the criminal workings of the association.  The sole reason to introduce such testimony is to link Wilson to the room where the gun was found.

In that light, such evidence is quintessential 404(b) evidence used to prove identity.  Proving the identity of the perpetrator is the most basic requirement of a criminal trial, and thus the evidence should be admitted.  *See United States v. Danzey*, 594 F.2d 905 (2d Cir. 1979) ("At a minimum, the defendant must prove that this defendant committed the crime for which he is on trial.").

### c.  Threats to witnesses evidence

Finally, Wilson's threats to Robin Williams are relevant because they show a consciousness of guilt.  Such evidence is not being used to make a propensity argument; the Government will not assert that Wilson is a threatening person, and therefore he was more likely to be the owner of the gun.

Instead, the Government will use the evidence for a proper purpose.  It will prove Wilson was worried about going to prison based on Robin Williams's

knowledge and testimony, and that he took steps to prevent her from working with authorities. His threats tend to make it more likely that he actually is guilty of the offense charged against him. "Courts may consider evidence of threats to witnesses as relevant in showing consciousness of guilt." *United States v. Gonzalez*, 703 F.2d 1222 (11th Cir. 1983).

## Conclusion

WHEREFORE, the United States of America requests that each request of the Defendant's motion be denied in its entirety, with arguments five, seven, and ten being denied as moot.

Respectfully submitted,

A. LEE BENTLEY, III
United States Attorney

By: */s/ Michael V. Leeman*
Michael V. Leeman
Assistant United States Attorney
Florida Bar No. 84422
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: michael.leeman@usdoj.gov

**U.S. v. Michael Wilson**                      **Case No. 8:16-cr-333-T-33MAP**

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2016, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will

send a notice of electronic filing to the following:

Grady C. Irvin, Jr.


*/s/ Michael V. Leeman*
Michael V. Leeman
Assistant United States Attorney
Florida Bar No. 84422
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: michael.leeman@usdoj.gov

*T:\_Cases\Criminal Cases\W\WILSON, Michael_2016R00884_MVL\Response to Motion in Limine.docx*