UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          8:16-cr-333-T-33MAP

MICHAEL WILSON
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Michael Wilson's Motion for a New Trial Based upon Newly Discovered Evidence (Doc. # 55), filed on October 12, 2016, Motion for Judgment of Acquittal (Doc. # 62), filed on November 14, 2016, and Motion for New Trial (Doc. # 63), also filed on November 14, 2016. (Doc. # 63). The Government has responded to the Motions. (Doc. ## 61, 65). For the reasons stated below, Wilson's Motions are denied.

**I.   Background**

On December 11, 2015, a Pasco County SWAT team executed a search warrant at a Springhill, Florida, mobile home in the Moon Lake neighborhood. The raid was conducted because "multiple people claimed that Michael Wilson was selling methamphetamine from the residence." (Doc. # 35 at 3). Law enforcement officers found Wilson, a/k/a "Moon Lake Mike," along with his girlfriend, Robin Williams, barricaded in a bedroom with a loaded handgun in plain sight. The officers also located digital scales, small baggies, marijuana,

methamphetamine, safes, pipes, cash, knives emblazoned with Nazi markings, and a drug ledger notebook labeled "Moon Lake Made." The bedroom wall was decorated with a tee shirt bearing the words: "White Pride World Wide." The trailer was outfitted with a surveillance system.

Wilson was indicted on July 26, 2016, and on September 20, 2016, the Grand Jury returned a superseding indictment charging Wilson with a single count: being a felon in possession of a firearm and ammunition. (Doc. ## 1, 18). The Superseding Indictment lists the following of Wilson's prior felonies: armed burglary in 1990, grand theft in 1990, leaving the scene of an accident involving injury in 1993, sale of cocaine in 2004, possession of cocaine in 2004, aggravated fleeing and eluding in 2004, aggravated assault on a law enforcement officer in 2004, felonious possession of firearms in 2005, and fleeing and eluding in 2013. (Doc. # 18).

Prior to trial, Wilson filed a motion in limine seeking exclusion of various categories of evidence, including evidence linking him to any white supremacist organization. (Doc. # 32). The Court denied the motion in limine, explaining:

> The two Nazi knives and the "white pride" tee shirt are relevant items of evidence. The Government has evidence that Wilson is affiliated with a white supremacist organization. Wilson denies that he

2

> inhabited the trailer where the gun was found, but there were multiple white supremacist items in the bedroom of the trailer. Wilson's membership in the group tends to make it more likely that the belongings were his, that he lived there, and that other items found there were his as well.

(Doc. # 38 at 8).

A jury trial commenced on October 3, 2016, and on October 5, 2016, the jury found Wilson guilty. (Doc. ## 44-50). The jury's verdict was consistent with the Government's evidence. Specifically, law enforcement officials and lay witnesses linked Wilson to a white supremacist group, which in turn connected Wilson to the bedroom where the gun and ammunition were found. The bedroom in question contained white supremacist propaganda and items depicting Nazi symbolism.

In addition, Wilson made calls from jail after his arrest in which he stated that he owned all of the items in the trailer, which would include the gun and ammunition. Furthermore, several witnesses offered testimony that they saw Wilson with the firearm. Wilson's girlfriend at the time of the raid identified the gun in question as Wilson's and testified that she was very familiar with the gun. She also specified that the room where the gun was located was indeed Wilson's bedroom. Another witness, Ricky Fann, testified that he knew Wilson through drug dealing. Fann testified that he saw Wilson with a silver firearm in the same bedroom where the

3

charged firearm was recovered by law enforcement. Yet another witness, Tabitha Higdon, testified that Wilson once left a silver firearm, as well as drugs, with her for a couple of hours.

After being found guilty, Wilson filed his Motion for a New Trial based on new evidence, in which he states in an affidavit:

> I was being transported from the Pinellas County Jail to the U.S. District Courthouse in Tampa, Florida. Also being transported was a Black woman, who I have learned is Priscilla Ellis, she had been on the transport vehicle the previous day, because I learned that she also was on trial in the courthouse. . . . Ms. Ellis stated that she was told to relay a message to me. Ms. Ellis stated: "Tabitha told me to tell you that she only said what she said on the stand because they threatened they would take her daughter if she didn't. She said she told them she was too high to remember anything. She said she was going to take the Fifth but they threatened to take her daughter."

(Doc. # 55-1 at 1).

The Government thereafter obtained affidavits from Higdon (Doc. # 61-4) and Senior Special Agent Keary Hundt. (Doc. # 61-3). Higdon has not recanted her trial testimony. She indicates that she never had a conversation with Ellis, and further states: "I was never promised anything or threatened by anyone to testify." (Doc. # 61-4 at 1). For his part, Agent Hundt states:

> I have interviewed and spoken with witness Tabitha Higdon on multiple occasions. I have never made any promises to Ms. Higdon of any kind, and I have

4

> never made any threats to her of any kind. Further, I am aware of no promises or threats made to Ms. Higdon in order to secure her testimony or cooperation against Michael Wilson at trial. On October 25, 2016, I traveled with another ATF agent to interview Ms. Higdon regarding statements about her in connection with Michael Wilson's motion for new trial in this matter. Ms. Higdon provided a written and recorded statement. She denied ever being threatened into giving her testimony at trial, and stated that she stood by her trial testimony as truthful. As we were leaving the interview, Ms. Higdon remarked to me that she didn't even have a daughter.

(Doc. # 61-3 at 1-2).

## II. **Rule 33 Motion for a New Trial**

A new trial pursuant to Fed. R. Crim. P. 33 may be granted in the interests of justice or on the basis of newly discovered evidence. United States v. Ramos, 179 F.3d 1333, 1336 (11th Cir. 1999). To warrant a new trial on the basis of newly discovered evidence, the defendant must establish all of the following: (1) the evidence was discovered after trial; (2) the failure of defendant to discover the evidence was not due to a lack of due diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to issues before the court; and (5) the evidence is such that a new trial would probably produce a different result. Id.; United States v. Jernigan, 341 F.3d 1273, 1287 (11th Cir. 2003).

A Rule 33 motion for a new trial "is addressed to the sound discretion of the trial court." United States v.

Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985). The Court may "weigh the evidence and consider the credibility of witnesses." Id. "If the court concludes that . . . the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." Martinez, 763 F.2d at 1312. The Court may follow this course even if the evidence is legally sufficient to sustain the verdict. Id. However, the Eleventh Circuit has stated that "[a] motion for new trial must be viewed with 'great caution.'" United States v. Reed, 887 F.2d 1398, 1404 (11th Cir. 1989) (quoting United States v. Hall, 854 F.2d 1269, 1271 (11th Cir. 1988)).

### III. Rule 29 Motion for Judgment of Acquittal

A motion for acquittal is governed by Federal Rule of Criminal Procedure 29. "As the text of the Rule indicates, and as courts and other authorities have recognized, '[t]he sole ground for a post-trial motion under Rule 29(c) is that the evidence was insufficient to sustain a conviction.'" United States v. Hunt, 412 F. Supp. 2d 1277, 1282 (11th Cir 2005)(quoting United States v. Miranda, 425 F.3d 953, 963 (11th Cir. 2005)). "The standard for assessing the sufficiency of evidence is whether any reasonable view of the evidence,

considered in the light most favorable to the government, is sufficient to allow a jury to find guilt beyond a reasonable doubt." United States v. Leonard, 138 F.3d 906, 908 (11th Cir. 1998)(citing United States v. Bush, 28 F.3d 1084, 1087 (11th Cir. 1994)).

**IV. Analysis**

    **A. Motion for New Trial Based on New Evidence**

Wilson argues that Ellis's message to him regarding Higdon warrants a new trial. As noted, to succeed on such a motion, Wilson must show: (1) the evidence was discovered after trial; (2) the failure of defendant to discover the evidence was not due to a lack of due diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to issues before the court; and (5) the evidence is such that a new trial would probably produce a different result. Ramos, 179 F. 3d at 1336 n.1.

The Government "does not dispute that prongs one, two, and four can be met by Wilson." (Doc. # 61 at 7). However, the Government shows that Wilson cannot carry his burden as to prongs three and five, and also demonstrates that a hearing is not warranted. Whether to hold an evidentiary hearing on a motion for a new trial based on new evidence is within the Court's discretion. United States v. Slocum, 708 F.2d 587, 600 (11th Cir. 1983). "Where evidentiary hearings are ordered, it

7

is because of certain unique situations typically involving allegations of jury tampering, prosecutorial misconduct, or third party confession." United States v. Hamilton, 559 F.2d 1370, 1373 (5th Cir. 1977).

When the trial judge is able to observe a witness testify in open court, "the acumen gained by a trial judge over the course of the proceedings makes her well qualified to rule on the basis of affidavits without a hearing." United States v. Schlei, 122 F.3d 944, 994 (11th Cir. 1997). Wilson's trial is fresh in the Court's mind, and a hearing is not required to flesh out the issues now presented.

### 1. The "New Evidence" is Hearsay and Merely Impeaching, thus Wilson Fails under Prong Three

Ellis's testimony as to what Higdon stated to Ellis about threats is pure hearsay, and it is not available as substantive evidence. United States v. Khanani, 502 F.3d 1281, 1292 (11th Cir. 2007)("Prior statements of witnesses are hearsay and are generally inadmissible as affirmative proof. It is a well-established principle of evidence, however, that prior inconsistent statements of a witness are admissible to impeach that witness.").

As argued by the Government, Wilson might be able to show that Ellis's testimony about what Higdon said is proper impeachment evidence (hearsay level one), but Wilson has no hearsay exception to allow the admission of what Ellis told

8

him (hearsay level two). Double hearsay must meet an admissibility exception at each level, otherwise it is not admissible. See Fed. R. Evid. 805; United States v. Walthour, 202 Fed. Appx. 367, 371 (11th Cir. 2006)("hearsay upon hearsay [is] inadmissible."). Because Wilson's affidavit is a mere recitation of rank hearsay, it is not grounds for a new trial. Not to mention, the theory does not even make sense because apparently Higdon does not have a daughter.

### 2. The "New Evidence" would not Produce a Different Result at Trial, thus Wilson Fails under Prong Five

Wilson claims that Ellis's statements are new evidence that could produce a verdict of not guilty. But, Ellis is an individual with a checkered past, and has a poor reputation for telling the truth. As stated by the Government, Ellis "is a multiple time convicted felon with a history of abusing the judicial process, up to an[d] including the killing of witnesses." (Doc. # 61 at 11).

In addition, even if Ellis could convince the jurors that Higdon had been threatened into giving testimony, the evidence presented by the Government would still support a guilty verdict. A conviction for possession of a firearm by a convicted felon can be shown by proving dominion and control over a bedroom filled with the felon's other belongings, without the need for eyewitness testimony. See United States v. Mobley, 322 Fed. Appx. 793, 796 (11th Cir. 2009)("with

regard to the conviction for possession of a firearm by a convicted felon, a reasonable jury could have found that [defendant] possessed the firearm because he had dominion and control over his bedroom, his bedroom closet, and likewise, the firearm that was located in his closet and next to his bookbag.").

The Court agrees that "if Higdon, or for that matter, Williams and Fann, had not testified at all about the gun, Wilson would still have likely been convicted." (Doc. # 61 at 11). Therefore, the Court finds that the newly discovered evidence regarding what Higdon allegedly stated to Ellis would not have led to a different result at trial. The Motion for a new trial based on newly discovered evidence is accordingly denied.

    **B.**   **Motion for New Trial based on Sufficiency of the Evidence and Credibility Issues**

Wilson argues, "Looking at the evidence in this case, the weight of such evidence is clearly against a verdict of guilty," warranting a new trial. (Doc. # 63 at 3). Wilson asserts that Williams, Fann, and Higdon were not credible witnesses and he also contends that "the testimony of these witnesses is overshadowed by the highly prejudicial white supremacist testimony presented by the Government and which became a core presentation in the Government's case." (Id. at 5).

The Court acknowledges that Fann has a deal with the Government and could benefit by testifying against Wilson. But, the Court's jury instructions covered that issue. In instruction number four, the Court explained: "To decide whether you believe any witness I suggest that you ask yourself . . . Did the witness have any particular reason not to tell the truth? Did the witnesses have any personal interest in the outcome of the case?" (Doc. # 49 at 6). The Court also advised in jury instruction number seven:

> You must consider some witnesses' testimony with more caution than others. For example, a witness may testify about events that occurred during a time when the witness was using addictive drugs, and so the witness may have an impaired memory of those events. And a witness who has been promised immunity from prosecution or witnesses who hope to gain more favorable treatment in his or her own case may have a reason to make a false statement in order to strike a good bargain with the Government. So while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.

(Id. at 10).

Although the Government's witnesses were not perfect, as they were using drugs and had potential bargains with the Government, the witnesses offered similar and consistent testimony and they corroborated one another. In addition, the testimony in question was corroborated by independent evidence, such as Wilson's own statements made in tape recorded conversations.

Furthermore, even if Fann, Williams, and Higdon were deemed wholly untrustworthy, Wilson would nonetheless not be entitled to a new trial. Even without the testimony of Williams, Fann, and Higdon, the Government established that Wilson possessed the firearm. In addition, while the Court recognizes that the evidence regarding Wilson's affiliation with white supremacists was potentially inflammatory, that evidence was an important part of the Government's case. That evidence linked Wilson to the bedroom where the gun was found. The Motion for a new trial is accordingly denied.

### C. Motion for Judgment of Acquittal

Last, Wilson maintains that he is entitled to a judgment of acquittal based on the sufficiency of the evidence, largely contending that the evidence presented was purely circumstantial. However, the Court finds as a matter of law that the evidence presented by the Government was more than sufficient to support the verdict.

"The standard for assessing the sufficiency of evidence is whether any reasonable view of the evidence, considered in the light most favorable to the government, is sufficient to allow a jury to find guilt beyond a reasonable doubt." Leonard, 138 F.3d at 908 (11th Cir. 1998)(citing Bush, 28 F.3d at 1087). "The test for evaluation of circumstantial evidence is the same as in evaluating direct evidence." United States

v. Henderson, 693 F.2d 1028, 1030 (11th Cir. 1982). As stated in the jury instructions, "There's no legal difference in the weight you may give to either direct or circumstantial evidence." (Doc. # 49 at 5). "Circumstantial evidence can be and frequently is more than sufficient to establish guilt beyond a reasonable doubt." Henderson, 693 F.2d at 1030.

To summarize the evidence, the Government presented evidence that the firearm was found in open view in a bedroom, which circumstantial evidence established was Wilson's. Wilson was covered in white supremacist tattoos and the bedroom with the firearm contained white supremacist items. Three witnesses provided direct testimony that the bedroom with the firearm was Wilson's bedroom. In addition, the witnesses testified that they saw Wilson carrying the charged firearm.

This evidence, when inferences are drawn in favor of the Government, supports a finding that the gun was Wilson's. See United States v. Gibson, 315 Fed. Appx. 778, 780 (11th Cir. 2009)("The record reveals that the evidence was sufficient to convict [defendant]. A jury could have found beyond a reasonable doubt that he was aware of and exercised dominion and control over the firearm. The firearm was located in plain view on the top shelf of his bedroom closet and the ammunition was visible through the glass door of the gun

cabinet located in his bedroom."); <u>United States v. Brown</u>, 587 F.3d 1082, 1091-92 (11th Cir. 2009)("Seven firearms and ammunition were found in the southeast bedroom and closet of [defendant's] house.  This bedroom also contained 12.3 grams of crack cocaine, containers with crack residue, crack pipes, and $1434 in cash.  The officers found [defendant's] Florida identification card and his prison identification card in this bedroom.  The proximity of Brown's identification cards to the firearms and the drug paraphernalia was sufficient to persuade a rational trier of fact that [defendant] was guilty of . . . being a felon in possession of a firearm.").

In this case, the Government satisfied its burden with respect to Wilson, and the jury could have, as it did, determine that Wilson was guilty beyond a reasonable doubt. The evidence does not preponderate against the verdict, such that it would be a miscarriage of justice to let the verdict stand.

The Court has evaluated each argument asserted by Wilson and determines that neither a new trial nor a judgment of acquittal is warranted.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Michael Wilson's Motion for a New Trial Based upon Newly Discovered Evidence (Doc. # 55), Motion for

Judgment of Acquittal (Doc. # 62) and Motion for New Trial (Doc. # 63) are **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 15th day of December, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE