[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11143
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cr-00333-VMC-MAP-1

UNITED STATES OF AMERICA,

                              Plaintiff - Appellee,

versus

MICHAEL WILSON,

                              Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 28, 2018)

Before WILSON, JORDAN, and EDMONDSON, Circuit Judges.

PER CURIAM:

Michael Wilson appeals his conviction for possession of a firearm by a convicted felon: the violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). No reversible error has been shown; we affirm.

I.

Wilson first contends the district court abused its discretion in admitting evidence that Wilson was a member of a white supremacist organization. Wilson contends the introduction of this evidence was unfairly prejudicial under Fed. R. Evid. 403.

We review for abuse-of-discretion a district court's evidentiary rulings. United States v. Dodds, 347 F.3d 893, 897 (11th Cir. 2003).[*] A district court "may

---

[*] Although Wilson's lawyer raised no contemporaneous objection to the introduction of white supremacist evidence at trial, this claim is preserved properly for appeal. "Once the court rules definitively on the record -- either before or at trial -- a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Fed. R. Evid. 103(b); see Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171, 1178 (11th Cir. 2013). Wilson filed a pre-trial motion in limine seeking exclusion of the white supremacist evidence, which the district court denied in a written order. At the beginning of trial, Wilson renewed his motion in limine challenging the white supremacist evidence; the district court denied the motion "for the reasons stated earlier." Because the district court made definitive evidentiary rulings on the record, Wilson preserved properly this claim for appeal.

To the extent Wilson argues on appeal that his lawyer unreasonably erred in failing to object contemporaneously to the introduction of the white supremacist evidence, that claim may

exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. We have said, however, that "Rule 403 is an extraordinary remedy which the district court should invoke sparingly." Dodds, 347 F.3d at 897 (quotations omitted). In considering admissibility under Rule 403, we view "the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." Id.

At trial, the government introduced the following evidence. Wilson's then-girlfriend, Robin Williams, testified that Wilson was a member of a "white pride group" and "talked a lot about the Aryan Brotherhood." An officer testified about items found in the bedroom in which Wilson was located, including two knives adorned with "Nazi insignia" and a t-shirt hanging on the wall, which read "White Pride World Wide." Photographs were admitted into evidence and published to the jury depicting the two knives and the "White Pride" t-shirt. Deputy Kozera, a former "gang detective," testified that the "White Pride" t-shirt and the two "Nazi" knives were evidence suggestive of a white supremacist group. Deputy Kozera also testified that Wilson's tattoos of "1488" and "Pure Bred" represented terms

---

be raised on collateral review. Cf. Massaro v. United States, 538 U.S. 500, 504-05 (2003) (explaining that a motion brought under 28 U.S.C. § 2255 -- rather than a direct criminal appeal -- is the preferred method for asserting claims for ineffective assistance of counsel).

often used by white supremacists. Photographs of Wilson's tattoos were admitted into evidence and published to the jury.

On appeal, Wilson raises no challenge to the district court's determination that the white supremacist evidence was "relevant" within the meaning of Fed. R. Evid. 401. The chief issue in dispute at Wilson's trial was whether Wilson was "in possession" of the gun found in the bedroom. That Wilson was a member of a white supremacist group had some tendency to make it more likely that the bedroom in which the Nazi memorabilia and the "White Pride" t-shirt were found belonged to Wilson and, thus, that the gun found in the bedroom also belonged to Wilson.

We must consider, however, whether the probative value of the white supremacist evidence was substantially outweighed by the danger of unfair prejudice. We have said that "[t]here is no place in a criminal prosecution for gratuitous references to race . . . Elementary concepts of equal protection and due process alike forbid a prosecutor to seek to procure a verdict on the basis of racial animosity." United States v. Bowman, 302 F.3d 1228, 1240 (11th Cir. 2002) (concluding the district court abused its discretion in admitting evidence of an organization's "whites-only" policy when defendant was charged with no racially-motivated crime and the evidence was cumulative of other evidence). "Such inflammatory evidence retains a sufficiently countervailing probative value only

when less prejudicial evidence fails to describe sufficiently the motive and nature of the crime." United States v. Lehder-Rivas, 955 F.2d 1510, 1518 (11th Cir. 1992).

Unlike other cases in which we have concluded that evidence of a defendant's connection to a white supremacy group was admissible, the evidence admitted in this case was not critical to establishing Wilson's motive or to complete the story of Wilson's crime. See id. at 1518-19 (evidence of defendant's favorable views toward Hitler and the Third Reich was "of considerable probative value" for proving defendant's motives, including his desire to "facilitate the demise of the United States by importing large quantities of cocaine"); United States v. Mills, 704 F.2d 1553, 1559-60 (11th Cir. 1983) (evidence of defendant's membership in -- and about the history and activities of -- the Aryan Brotherhood were necessary to prove motive and to complete the story of the crime where defendant was accused of murdering a federal prisoner on the orders of a fellow Aryan Brotherhood member).

The government says, instead, that the white supremacist evidence was introduced solely to link Wilson to the bedroom in which the gun was found. As discussed in more detail in the next section, the government also seems to have introduced enough other evidence to establish Wilson's connection to the bedroom and to the gun found therein. Although much of the government's other evidence

5

consisted of testimony from witnesses with criminal records, we have said that "[m]ere corroboration of testimony . . . fails to justify the introduction of unrelated bad acts." See Lehder-Rivas, 955 F.2d at 1518 (rejecting the government's argument that witness testimony about swastika labels was necessary to "corroborate related testimony by witnesses with shaky credibility.").

Given that evidence of Wilson's membership in a white supremacy group was unnecessary to establish Wilson's motive or to provide a context for the crime and that the evidence was cumulative of other (less unfair) evidence easily sufficient to link Wilson to the bedroom and to the gun, the evidence was of limited probative value. On this record, the prejudicial nature of the white supremacist evidence might well have outweighed substantially the probative value of the evidence. So, from this point on in today's opinion, we will just suppose the pertinent evidence should have been excluded under Rule 403. Cf. id. at 1518-19 (the district court abused its discretion by admitting testimony that defendant planned to label his drugs with swastikas because the method of labeling the drugs "was not critical to the prosecution's establishment of a conspiracy.").

Even when the district court makes an erroneous evidentiary ruling, we will not reverse a conviction "unless there is a reasonable likelihood that [the error] affected the defendant's substantial rights." United States v. Langford, 647 F.3d 1309, 1323 (11th Cir. 2011). "No reversal will result if sufficient evidence

6

uninfected by any error supports the verdict, and the error did not have a substantial influence on the outcome of the case." Id.

Here, the government produced ample evidence -- including Wilson's own statement asserting ownership over the belongings in the house -- from which a jury could conclude beyond a reasonable doubt that Wilson possessed the gun charged in the indictment. Given the other strong evidence of Wilson's guilt, we are unpersuaded that the error in admitting the white supremacist evidence affected Wilson's substantial rights such that reversal is warranted. Cf. Bowman, 302 F.3d at 1240 (although the district court erred in admitting evidence of the "whites-only" policy, the error was harmless in the light of the overwhelming evidence of defendant's guilt); Lehder-Rivas, 955 F.2d at 1518-19 (admission of evidence about swastika labels -- although erroneous -- was harmless where the testimony was brief and where the jury was exposed to other similar properly-introduced evidence).

II.

Wilson next challenges the district court's denial of his motion for a judgment of acquittal. Wilson argues that insufficient evidence exists to prove that he "possessed" the gun charged in the indictment.

7

"We review de novo a district court's denial of judgment of acquittal on sufficiency of evidence grounds." United States v. Rodriguez, 732 F.3d 1299, 1303 (11th Cir. 2013). In determining the sufficiency of the evidence to support a conviction, "we consider the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices in the government's favor." Id. We cannot overturn a jury's verdict unless no "reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." Id.

To obtain a conviction for possession of a firearm by a convicted felon, the government must prove (1) the defendant was a convicted felon; (2) the defendant was in knowing possession of a firearm; and (3) the firearm was in or affected interstate commerce. United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004). Only the second element is at issue on appeal: whether Wilson knowingly possessed the gun charged in the indictment. "Possession" may be either actual or constructive. Id. Constructive possession is shown when the government proves -- through direct or circumstantial evidence -- that the defendant (1) knew about the firearm's presence and (2) "had the ability and intent to later exercise dominion and control over that firearm." United States v. Perez, 661 F.3d 568, 576 (11th Cir. 2011).

At trial, an officer testified that -- during a search of the bedroom in which Wilson was located -- the officer found in plain sight a loaded .45 caliber handgun, which was silver in color with a brown handle.  Williams testified that Wilson owned a chrome gun with a brown handle and that Wilson carried the gun with him "all the time."  Williams was shown photographs of several items officers found in the bedroom and confirmed that the items -- including the gun -- belonged to Wilson.

Ricky Fann testified that, when he visited Wilson's house less than a month before Wilson's arrest, Fann saw a "silver 1911 frame, .45 [caliber] semiautomatic" lying on the bed near Wilson.  Fann testified that he had at times also seen Wilson carrying that gun in his pants or in his bag.  Tabitha Higdon testified that, on one occasion, Wilson asked her to hold a "small" and "silver" gun for him.

The government also introduced a recorded phone conversation between Wilson and an unidentified woman.  During the conversation -- recorded shortly after Wilson's arrest -- Wilson instructed the woman "to go down and get my stuff out of that house . . . Everything in that house was mine that's worth money . . . Everything but the furniture."

Viewed in the light most favorable to the government, the evidence presented at trial was sufficient to permit a reasonable factfinder to conclude

beyond a reasonable doubt that Wilson possessed knowingly the gun found in the bedroom. Three witnesses testified expressly that they had each seen Wilson with a gun matching the description of the gun charged in the indictment. The gun was found in plain view in the bedroom in which Wilson was located when police executed the search warrant. Moreover, Wilson's comments during the recorded phone conversation -- that everything of value in the house belonged to him -- supports the conclusion that the gun found in the bedroom belonged to Wilson. The district court committed no error in denying Wilson's motion for judgment of acquittal.

### III.

Wilson next challenges the district court's denial of his motion for a new trial based on newly-discovered evidence. Wilson also contends that the district court abused its discretion in ruling on the motion without an evidentiary hearing.

In an affidavit submitted in support of his motion for a new trial, Wilson alleged that a fellow inmate (Priscilla Ellis) told Wilson the following:

> Tabitha [Higdon] told me to tell you she only said what she said on the stand because they threatened they would take her daughter if she didn't. She said she told them that she was too high to remember anything. She said she was going to take the Fifth but they threatened to take her daughter.

We review a district court's denial of a motion for a new trial -- and the district court's denial of an evidentiary hearing -- under an abuse-of-discretion standard.  United States v. Fernandez, 136 F.3d 1434, 1438 (11th Cir. 1998).  "Motions for new trial based on newly discovered evidence are highly disfavored . . . and should be granted only with great caution."  United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc).

To succeed on a motion for a new trial based on newly-discovered evidence, the movant must satisfy these five elements: (1) the evidence was discovered after trial; (2) the evidence could not have been discovered earlier through due diligence; (3) the evidence is "not merely cumulative or impeaching;" (4) the evidence is material to issues before the court; and (5) the evidence is "of such a nature that a new trial would probably produce a different result."  United States v. Lee, 68 F.3d 1267, 1273 (11th Cir. 1995).  "The failure to satisfy any one of these elements is fatal to a motion for new trial."  Id. at 1274.

The newly-discovered evidence upon which Wilson relies -- evidence that the government allegedly pressured Higdon to testify against Wilson -- serves only to impeach Higdon's credibility.  Moreover, Wilson has failed to demonstrate that the newly-discovered evidence would have "probably" changed the outcome of his trial.  Even if Wilson could show that Higdon testified falsely, Higdon's testimony was cumulative of other testimony and evidence linking Wilson to the gun found in

the bedroom.  Because Wilson failed to satisfy each of the required elements for a new trial, the district court abused no discretion in denying his motion.

The district court also abused no discretion in ruling on Wilson's motion without first holding an evidentiary hearing.  "[A] motion for new trial may ordinarily be decided upon affidavits without an evidentiary hearing."  United States v. Hamilton, 559 F.2d 1370, 1373 (5th Cir. 1977).  This case presents no "unique circumstances" warranting a departure from that general rule.  See id. (noting that evidentiary hearings may be warranted in cases "involving allegations of jury tampering, prosecutorial misconduct, or third party confession.").  That the district court judge who considered Wilson's motion for new trial also presided over Wilson's criminal trial further undercuts the necessity of an evidentiary hearing.  See id. at 1373-74 ("the acumen gained by a trial judge over the course of the proceedings made him well qualified to rule on the basis of affidavits without a hearing.").

AFFIRMED.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 28, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 17-11143-FF
Case Style: USA v. Michael Wilson
District Court Docket No: 8:16-cr-00333-VMC-MAP-1

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Janet K. Mohler, FF at (404) 335-6178.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion